100 August 12, 2026 No. 755

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HEIDI MARIE DUNN,
*Defendant-Appellant.*

Malheur County Circuit Court
21CR56535; A184108

Lung S. Hung, Judge.

Submitted May 9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a supplemental judgment imposing restitution after she was convicted, based on guilty pleas, of criminally negligent homicide and third-degree assault. On appeal, defendant argues that the trial court erred in awarding restitution to the victim's mother for funeral expenses because those expenses were released in a settlement agreement with the victim's estate. We conclude that the trial court did not err and affirm.

The underlying facts are that defendant passed a truck on a rural highway and struck H's vehicle head on, killing H and seriously injuring another person. Following the accident, defendant entered into a release and settlement agreement with H's estate. That agreement provided in the recitals that "[t]he parties to this Release and Settlement Agreement desire to settle and compromise all claims and potential claims, including wrongful death claims, the Estate of [H] and its heirs and beneficiaries may have against [defendant] arising out of the April 16, 2021 accident." Pursuant to the agreement, defendant's insurance paid H's estate the bodily injury limits under defendant's insurance policy. In return, H's estate provided the following release:

> "3. Releases. Except for claims arising out of the Release and Settlement Agreement, the Estate of [H], its heirs and beneficiaries, successors and assigns, hereby release and forever discharge [defendant], her agents, directors, servants, employees, insurers and any successors and assigns, jointly and severally, of and from any and all debts, actions, causes of actions, suits, accounts, contracts, agreements, claims, demands, liability for loss, injury to person or property, consortium claims, wrongful death claims, punitive damages, expenses, attorney fees, costs, and damages whatsoever, known or unknown, suspected or unsuspected, which against the aforesaid persons the Estate of [H] ever had, now has, can, shall, or may have, whether in the Estate of [H]' s own name or in the names of or through any other entity or person, including, without limitation, any and all claims arising out of or in any way related to or caused by matters complained of or which might have been complained of from the accident of April 16, 2021."

The agreement is signed by H's mother, J, as "Special Administrator for the Estate of [H]."

After entering into that agreement, defendant pleaded guilty to criminally negligent homicide and third-degree assault. The state then sought restitution for the funeral expenses that J had incurred immediately after H's death. The court awarded those expenses in the amount of $7,540.52. Relying on *State v. Stephens*, 311 Or App 588, 493 P3d 2, *rev den*, 368 Or 597 (2021), the court concluded that H's estate and J were separate victims for purposes of restitution, and that the release and settlement agreement released claims of H's estate but not claims of other victims.

On appeal, in a single assignment of error, defendant argues that the court erred in awarding J restitution because the release and settlement agreement precluded it.

"We review sentencing decisions, including restitution orders, for errors of law." *State v. Noble*, 231 Or App 185, 189, 217 P3d 1130 (2009). Before we address defendant's arguments, we first clarify what is and is not at issue here. Defendant does not dispute that the funeral expenses for H constitute economic loss for purposes of restitution, that J incurred those expenses, or that J is a "victim" of defendant who may seek restitution. *See* ORS 137.103(4)(b) (defining "victim" for purposes of restitution to include "[a]ny person *** whom the court determines has suffered economic damages as a result of the defendant's criminal activities"). The sole issue we must address is whether J released her claim to recover those expenses from defendant when she signed the release and settlement agreement. Because we ultimately agree with the state that *Stephens* controls the outcome here, we begin with that case.

In *Stephens*, the defendant hit and killed a bicyclist with his car, leading to a conviction for second-degree manslaughter. 311 Or App at 589. Prior to the restitution hearing, the victim's estate, represented by her husband, D, entered into a settlement and release agreement with the defendant's insurer. *Id.* at 602. That release agreement provided that D, for the estate of the victim, released the defendant from all claims resulting from the accident. *Id.* at

602-03. Over the defendant's objection based on the release agreement, the trial court awarded restitution to D for the victim's salary and benefits for a year, funeral expenses, and the value of her bicycle. *Id.* at 602.

On appeal, we concluded that the trial court did not err. We explained that, "[a]s a general principle, the personal representative of an estate 'is a *distinct legal entity*, from the individual who performs that role \*\*\*.'" *Id.* at 605 (quoting *Johnson v. Manders*, 127 Or App 147, 150, 872 P2d 420, *rev den*, 319 Or 149 (1994) (emphasis in *Johnson*)). We further explained that the restitution statutes also distinguish between the individual crime victims and the estates of such victims, which "reflect the principle that a decedent's estate may be a victim, with its own losses, distinct from any other victims (such as the decedent's spouse) who have their own losses." *Id.* at 606. When D signed the settlement and release agreement, he signed on behalf of the victim's estate, he did not sign in his individual capacity; thus, we concluded that the agreement did not release claims D had for his own losses. *Id.*

We do not see any meaningful distinction between this case and *Stephens*. J signed the release and settlement agreement as the special representative of H's estate; she did not sign the agreement in her individual capacity and thus did not release her individual claims.[1] The trial court awarded restitution to J, as a victim in her own right, separate from H's estate.

Defendant, however, argues that the release in this case was broader than the one in *Stephens* because it purported to also cover the "heirs and beneficiaries" of H's estate. That argument fails to grapple with the fact that the release only released claims belonging to H's estate—that is, the release covered "heirs and beneficiaries" of H's estate, but only for claims "the Estate of [H] ever had, now has, can, shall, or may have, whether in the Estate of [H]'s own name

---

[1] Defendant asserts that a contingency fee agreement J signed with her attorneys demonstrates that J understood that she could not assert individual claims against defendant. However, whatever J may have acknowledged in the fee agreement with her attorneys does not bind her with respect to defendant, who was not a party to that fee agreement, nor was the fee agreement a release of claims against defendant.

or in the names of or through any other entity or person."
That language does not include claims held individually by
heirs or beneficiaries separate from H's estate. Here, the
trial court found that the funeral expenses were expenses
that J incurred in her individual capacity as a victim sepa-
rate from H's estate, and the record supports that finding.
Defendant has not pointed to anything to support an argu-
ment that that finding is factually or legally incorrect. Thus,
we conclude that the trial court did not err.

     Affirmed.